UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY A. JAMES,<br><br>    Plaintiff,<br><br>    v.<br><br>TEMPUR SEALY INTERNATIONAL, INC.,<br><br>    Defendant. | Case No. 18-cv-07130-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 10, 24 |

On January 11, 2019, the Court held a hearing on defendant's motion to dismiss the complaint. For the reasons stated below, the Court GRANTS defendant's motion to dismiss, without leave to amend Claims 1 and 2, and with leave to amend Claims 3 and 4. If plaintiff wishes to amend the complaint, he must file his amended complaint **no later than February 8, 2019.**

**INFORMATION FOR PRO SE LITIGANTS**

The Court advises that free information is available to pro se litigants from the Legal Help Desk, if needed. Help Desks are located at the San Francisco and Oakland Courthouses and assistance is available by appointment. The San Francisco Help Desk is located at 450 Golden Gate Ave., 15th Floor, Room 2796 San Francisco, CA 94102. The Oakland Help Desk is located at 1301 Clay Street, 4th Floor, Room 470S Oakland, CA 94612. To make an appointment, call: (415) 782-8982. *See also* http://cand.uscourts.gov/helpcentersf. The Legal Help Desk can provide plaintiff with information about how to accomplish service of process.

The Clerk's Office has a handbook for pro se litigants, entitled *Representing Yourself in Federal Court: A Handbook for Pro Se Litigants*. The handbook is available free of charge from the Clerk's Office or can be downloaded online at: https://www.cand.uscourts.gov/prosehandbook.

**BACKGROUND**

Plaintiff Anthony Alexander James, who is representing himself *pro se*, filed this lawsuit against defendant Tempur Sealy International, Inc. ("Tempur Sealy"), in Contra Costa County Superior Court on October 22, 2018. Defendant removed the case to this Court on November 23, 2018, on the basis of diversity jurisdiction. Docket No. 1. For purposes of this motion to dismiss, the Court treats as true plaintiff's allegations in the complaint.

Plaintiff states that he began working for Tempur Sealy in March 2011 as a class A driver, delivering mattresses to customers such as Macy's, Sears, and JC Penney's. *Id.* ¶¶ 10, 14. He had prior experience as a senior driver for a company called High Mountain. *Id.* He has fourteen years of experience driving Class A tractor trailers. *Id.* ¶ 9.

On March 21, 2016, plaintiff logged into the Tempur Sealy electronic system log three minutes early, but the system kicked out a warning that he had logged in too early.[1] *Id.* ¶ 18. Plaintiff tried to log back out without moving the truck and log back in five to ten minutes later, but the system would not let him do so. *Id.* By way of background, plaintiff explains that in 2015 Tempur Sealy switched from a paper log to electronic log system and that the electronic system had a lot of glitches that a manager would need to manually correct and then reset the computer. *Id.* ¶¶ 15-16. At this point, plaintiff called and texted his manager, Lester Sequeira, "to see what he want[ed] him to do because usually in these situations the manager would reset the computer for the driver," but his manager didn't respond. *Id.* ¶ 19. Plaintiff then "proceeded on with the job on paper log" and "kept driving [and] making deliveries for the day." *Id.* ¶ 20. He also made deliveries on March 22, 2016. *Id.* At the end of the day on March 22, 2016, plaintiff's manager called and said plaintiff needed to meet with the Human Resources manager and his union shop steward "for a violation for clocking in three minutes early [in] violation [of] the ten hour rest rule." *Id.* "At the meeting Mr. James was told he would be suspended for two days and the matter would be under investigation." *Id.* ¶ 21. "Two days pass[ed] and the company left Mr. James out of work for one

---

[1] Defendant explains that Department of Transportation regulations require that drivers "may not drive without first taking 10 consecutive hours off duty[.]" *See* Docket No. 10-1 ("Def.'s Mot.") at 2 & n.3 (quoting 49 C.F.R. § 395.3).

month." *Id.* Plaintiff contacted his senior rep union manager, Ulises Vergara, to file a grievance but "[n]o one responded back to Mr. James." *Id.*

"One month after the day of the violation Mr. James was called by Lester Sequeira to sign Mr. James['s] termination papers. In the meeting Mr. James noticed that the company had add[ed] two more additional suspensions that Mr. James wasn't not [sic] aware of[;] Mr. James wasn't never [sic] suspended within a year, two times." *Id.* ¶ 22. A few days later plaintiff reached out to senior rep union manager Vergara to request his personnel files and to file a grievance "[b]ecause Mr. James was never suspended two times in a year." *Id.* ¶ 23. About four months later, Vergara responded with a letter "saying that Mr. James was suspended, on December 14, 2015 for two days, and suspended on December 14 [sic], 2015 for three days, and on January 25, 2016 for two days, and since Mr. James had three one-day suspension[s] in a rolling 12-month period" he would be terminated pursuant to the Tempur Sealy driver manual, section 1.07.[2] *Id.* ¶ 24. Plaintiff alleges that in light of the information about the third suspension on January 25, 2016, "the union didn't want to meet with Mr. James for arbitration" or to review his personnel files. *Id.* ¶ 25.

In August 2016, plaintiff and Vergara met to review plaintiff's personnel files. *Id.* ¶ 27. At that meeting, plaintiff and Vergara discovered that the suspensions on December 14 and 15, 2015, and on January 25, 2016, were "sign[ed] by someone other than Mr. James, someone working for the company, and that Mr. James['s] name was forge[d] on the documents that the company indicated he was suspended on, falsifying documents [and] faking like Mr. James signed them." *Id.* Moreover, the company's contract states that a union witness has to sign off on any disciplinary action and no union witness representative had signed these suspensions. *Id.* Plaintiff states that on the days the company claimed plaintiff was suspended, he has proof of bank statements showing direct deposits that he worked the whole week, more than forty hours per week on each paycheck, as well as child support statements showing that payments were taken out of his checks for those weeks he was supposed to have been suspended. *Id.* ¶ 29.

---

[2] Elsewhere in the complaint, and in the exhibits attached to the complaint, plaintiff clarifies that the dates of his alleged suspensions were December 14, 2015; December 15, 2015; and January 25, 2016. *See* Compl. ¶ 27 & 20.

3

United States District Court
Northern District of California

Additionally, plaintiff alleges that defendant "then tr[ied] to offer him less money with a hair test, and Mr. James refused. At this point the company retaliated with the falsified information and terminated[] him." *Id.* ¶ 28. Plaintiff attaches various documents to his complaint, including the first page of a right to sue letter from the California Department of Fair Employment and Housing ("DFEH"), dated February 28, 2018; a letter from Vergara to plaintiff dated July 14, 2016; and bank statements for the December 2015 and January 2016 periods. *Id.* at 19-27.

The complaint states four causes of action: (1) "wrongful termination in violation of public policy;" (2) "breach of contract U.S. code 6503;" (3) "fraud;" and (4) "retaliation in violation of FEHA [California's Fair Employment and Housing Act], Gov't code 12940 et seq." Plaintiff seeks $700,000 in damages as well as injunctive relief.

On November 30, 2018, defendant filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Docket No. 10. Defendant states that plaintiff "was terminated in April 2016 under the [collective bargaining agreement's] progressive discipline procedure." Def.'s Mot. at 1. Defendant further states that defendant and plaintiff's union ultimately settled plaintiff's grievance, "with the Company agreeing to reinstate Plaintiff in September 2016 after he passed the drug test required under Department of Transportation ("DOT") regulations. Plaintiff showed up at the testing site but refused to take the drug test after learning it would be a hair follicle test. Accordingly, he was not reinstated." *Id.* Defendant argues that plaintiff's complaint is not properly pleaded and is untimely and that plaintiff failed to exhaust his administrative remedies. *Id.*

In response, plaintiff filed several documents. Two of these are titled "Requesting Exhibits from Defendant" and appear to be requests for production of documents. *See* Docket Nos. 15, 21. Another filing is entitled "Responding to Motion Not to Dismiss Exhibit[s] 22, 23, and 24." Docket No. 16. Plaintiff also filed a document, "Motion Not to Dismiss Complaint," which is substantively identical to his original complaint. *See* Docket Nos. 17, 19. Defendant filed a reply brief on December 21, 2018. Docket No. 20. On December 31, 2018, plaintiff filed a document entitled, "Motion Not to Dismiss Complaint Re[s]ponding to Defendant." Docket No. 22. On January 7, 2019, defendant filed a motion to strike plaintiff's December 31 filing, arguing that it is an improperly filed sur-reply. Docket No. 24.

4

The Court has considered all these documents in ruling on the motion to dismiss.[3]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

*Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

---

[3] Although the Court has considered plaintiff's December 31, 2018 filing, *see* Docket No. 22, the Court does not rely on that filing in reaching its decision today. Accordingly, the Court DENIES AS MOOT defendant's motion to strike the filing. *See* Docket No. 24.

# DISCUSSION

## I. First Cause of Action for Wrongful Termination

Defendant moves to dismiss plaintiff's first cause of action, for wrongful termination in violation of public policy, for two reasons: (1) defendant argues that the claim is untimely because it should have been brought within two years of plaintiff's termination, and (2) defendant argues that plaintiff has not shown what public policy his termination violated.

Under California law, claims of wrongful termination in violation of public policy are governed by the two-year statute of limitations for personal injury claims, Code of Civil Procedure § 335.1 (2003). *See Prue v. Brady Co./San Diego, Inc.*, 242 Cal. App. 4th 1367, 1382 (2015). Plaintiff's complaint does not give the exact date of his termination. It says that on March 21, 2016, plaintiff clocked in three minutes early and was charged with "a violation for clocking in three minutes early [in] violation [of] the ten hour rest rule." Docket No. 1-1 ("Compl.") ¶ 20. The complaint further states that plaintiff's manager called plaintiff to sign his termination papers "[o]ne month after the day of the violation[.]" *Id.* ¶ 22. At the hearing, plaintiff said he was terminated on March 23, 2016, and that the negotiated reinstatement failed in September, 2016. Plaintiff filed this lawsuit on October 22, 2018. Because he filed the lawsuit more than two years after his termination date, he can no longer bring a claim for wrongful termination in violation of public policy. Plaintiff's first cause of action is barred by the statute of limitations and is DISMISSED without leave to amend. For this reason, the Court need not reach defendant's alternative argument that plaintiff's claim fails because plaintiff did not identify which public policy his termination violated.

## II. Second Cause of Action for Breach of Contract

Plaintiff brings his second cause of action for breach of contract, citing 41 U.S.C. § 6503. He states that defendant never brought to plaintiff's attention the three suspensions where defendant allegedly forged plaintiff's signature and signed documents without a union representative. Compl. ¶ 45. He further alleges that defendant's policy requires a third party witness union rep "to sign as witness for any disciplinary action brought forward[.]" *Id.* ¶ 46. He states that the procedures were followed for non-African Americans, but that "[d]efendant broke the protocol and procedures for

plaintiff, by forg[ing] the plaintiff['s] signature." *Id.* ¶ 47. Plaintiff also references his union contract and states that defendant "is not a[n] at will company[.]" *Id.* ¶ 48. Defendant asks the Court to dismiss plaintiff's second cause of action as "an insufficiently plead hybrid § 301 action" and as untimely. Def.'s Mot. at 7.

As an initial matter, plaintiff's citation to 41 U.S.C. § 6503 is misplaced. That statute applies to contracts "made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000 . . . ." *See* 41 U.S.C. §§ 6502, 6503. Plaintiff's second cause of action is based on defendant's alleged breach of the union contract. *See* Compl. ¶ 48. Because it is a federal claim for breach of the collective bargaining agreement ("CBA"), it must be brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (explaining that the Supreme Court has held that the federal common law of CBA interpretation under § 301 "preempts the use of state contract law in CBA interpretation and enforcement") (citation omitted); *see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987) (finding the district court properly characterized plaintiff's state law claim for breach of oral employment contract as a federal § 301 claim, even though plaintiff did not mention in the complaint that her employment was governed by a CBA).

In "hybrid" § 301 actions, "the employee generally sues the union and the employer, though not necessarily both, alleging that the employer unfairly treated the employee. The plaintiff in a hybrid action also generally alleges . . . that the union violated the duty of fair representation owed the employee." *Conley v. Int'l Bhd. Of Elec. Workers, Local 639*, 810 F.2d 913, 915 (9th Cir. 1987). Where an individual employee brings suit against his employer for breach of a collective bargaining agreement:

> [s]uch a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.[] "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'"

7

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983) (citations and footnote omitted). This is so even if the employee chooses to sue only the employer and not the union. *Id.* at 165.

Here, the Court agrees with defendant that the second cause of action was filed too late. The Supreme Court has stated that § 301 hybrid claims are subject to the statute of limitations under § 10(b) of the National Labor Relations Act, which provides for a six-month period for making charges of unfair labor practices. *Id.* at 169-72. Here, plaintiff did not file his case within the six-month period. The complaint discusses events through August 2016. At the hearing, plaintiff explained that the drug tests were supposed to happen in September 2016 and that the union decided not to pursue his case further around January or February 2017. Even using the latest of these dates, plaintiff missed the six-month window to bring a § 301 hybrid claim when he filed this lawsuit in October 2018. The Court therefore GRANTS defendant's motion to dismiss plaintiff's second cause of action, without leave to amend

### III. Third Cause of Action for Fraud

Defendant moves to dismiss plaintiff's third cause of action, arguing that it fails to meet the heightened pleading standard for fraud outlined in Federal Rule of Civil Procedure 9(b). For allegations of fraud or mistake, a complaint must meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Fraud or mistake can be averred specifically, or by alleging facts that necessarily constitute fraud, unilateral mistake, or mutual mistake (even if those terms are not explicitly stated). *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) is satisfied if the allegations "identif[y] the circumstances constituting fraud (or mistake) so that the defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103.

In his complaint, plaintiff relies on 18 U.S.C. § 1002, which is a criminal statute regarding possession of false papers to defraud the United States or any United States agency. *See* 18 U.S.C.

§ 1002; Compl. ¶¶ 53-54. That statute does not apply to this case. Even assuming that plaintiff intended to bring his fraud claim under California common law, which is what defendant assumes in its motion, plaintiff has failed to provide enough information to state his claim.

Under California law, the elements of fraud are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 481 (1998); *see also Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).

Although plaintiff alleges that defendant made a misrepresentation by falsifying his signature on three of his suspensions, the complaint does not allege the remaining elements of fraud. In particular, the complaint does not allege that defendant intended to deceive plaintiff and induce his reliance or that plaintiff justifiably relied on the misrepresentation. It would have been a different matter if, for instance, plaintiff had alleged that he would have taken different actions at work if he had known about defendant's misrepresentation.

Accordingly, the claim must be dismissed for failing to meet the heightened pleading standard for fraud under Rule 9(b). The Court will grant plaintiff leave to amend. In any future amended complaint, **plaintiff should allege (1) the material misrepresentations of fact defendant made to plaintiff; (2) facts that show defendant knew these misrepresentations were false; (3) facts that show defendant intended to deceive and induce plaintiff; (4) that plaintiff justifiably relied on the misrepresentations and acted accordingly; and (5) the resulting damages.**

**IV.     Fourth Cause of Action for Retaliation in Violation of FEHA**

Finally, defendant moves to dismiss plaintiff's fourth cause of action, stating both that plaintiff failed to exhaust his administrative remedies before the DFEH and that plaintiff failed to show he engaged in a protected activity under FEHA. Defendant refers to an exhibit attached to a request for judicial notice, which it states is the administrative charge plaintiff filed with the DFEH on March 30, 2017. Docket No. 10-6 at 2-3.

In the complaint, plaintiff states that he "engaged in protected activity when he complained

9

to defendant's managers regarding that clocking in three minutes early wasn't a violation, and he was never suspended three times within 12 months according to company policy, regarding discrimination. Defendant subjected plaintiff to adverse employment actions when it terminated plaintiff shortly after he engaged in this protected activity." Compl. ¶¶ 65-66. Plaintiff also states that he "filed a timely charge against defendant with the DFEH alleging, interiliac [sic], retaliation. Therefore, plaintiff received from the DFEH notification of his right to sue. See Exhibit A." *Id.* ¶ 68. Attached to the complaint is the cover page of a right to sue letter from the DFEH dated February 28, 2018. *Id.* at 19. The letter does not state the basis of plaintiff's complaint.

The Court agrees with defendant that plaintiff has failed to plead that he engaged in protected activity under FEHA prior to his termination. To state a *prima facie* case of retaliation, a plaintiff must show: "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers,* 468 F.3d 528, 541 (9th Cir. 2006). Under FEHA, "a 'protected activity' exists where the plaintiff 'has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 925 (N.D. Cal. 2012) (quoting Cal. Gov't Code § 12940(h)).

Plaintiff has failed to identify any practices forbidden under FEHA that he opposed prior to his termination. Because the retaliation claim in the complaint is not entirely clear, and could potentially be fixed through amendment, the Court will grant plaintiff leave to amend this claim. **If plaintiff chooses to amend, he needs to state facts showing: (1) that he was involved in protected activity opposing an unlawful employment practice and identify what part of FEHA makes that employment practice unlawful; (2) what the adverse employment action was; and (3) the causal link between the protected activity and the adverse action.** <u>**To the best of his ability, he should provide clear timelines for when all of these events happened.**</u>

The Court will not at this time address defendant's argument regarding administrative exhaustion. First, the Court DENIES defendant's request for judicial notice to the extent that it seeks judicial notice of disputed facts. *See* Docket Nos. 10-5, 10-6. Although the Court may take judicial notice of matters of public record, it may not take judicial notice of facts in the public record

10

that are subject to reasonable dispute.[4] *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Here, defendant seeks judicial notice of the contents of plaintiff's complaint with the DFEH, which plaintiff says alleged retaliation and defendant states did not. Judge Gonzalez Rogers of this District recently rejected a similar argument by defendants "that the plaintiffs' administrative charges did not include a claim for disparate impact discrimination." *See Gamble v. Kaiser Found. Health Plan, Inc.*, --- F. Supp. 3d ----, No. 17-cv-06621-YGR, 2018 WL 6619985, at *6 (N.D. Cal. Dec. 18, 2018). The defendants sought judicial notice of plaintiffs' administrative charges, but the court explained that it "cannot take judicial notice of the administrative charges in connection with this issue without converting the motion to one for summary judgment, which it declines to do." *Id.* So too here.

Additionally, until plaintiff clarifies the scope and basis of his retaliation claim, the Court cannot say with certainty whether he exhausted his claim in the charge he filed with the DFEH. A court may adjudicate a claim not brought in an administrative charge if the claim "is like or reasonably related to the charge" filed with the DFEH and "would 'reasonably have been uncovered in an investigation of the charges that were made.'" *Baird v. Office Depot*, No. 12-cv-6316 EMC, 2014 WL 2527114, at *3 (N.D. Cal. June 4, 2014) (citing *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1617 (1995); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)). It is therefore possible that even if plaintiff did not use the word "retaliation" in his DFEH complaint, he may still have exhausted his claim. *See, e.g., Baird*, 2014 WL 2527114, at *3; *see also Zapponi v. CSK Auto, Inc.*, No. 02-cv-0536 TEH, 2002 WL 31750219, at *5 (N.D. Cal. Dec. 4, 2002) ("Given the relationship between the retaliation claim and the other allegations, it is reasonable to assume that an investigation into the harassment and discrimination claims would alert Defendant to Plaintiff's allegation that she was denied a promotion in retaliation for speaking out about Defendant's unlawful conduct.") (citations omitted). **To that end, if plaintiff amends this**

---

[4] The Court GRANTS the request for judicial notice, to the extent that it seeks judicial notice of facts not subject to reasonable dispute, such as the fact of plaintiff's filing a charge with the DFEH. Plaintiff stated at the hearing that he filed one complaint with the DFEH, around February 2017.

11

**claim, he should also include any additional details that he can regarding how he exhausted this claim with the DFEH.**

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion. The Court GRANTS the motion to dismiss the first and second causes of action, without leave to amend. The Court GRANTS the motion to dismiss the third and fourth causes of action, with leave to amend. The Court DENIES AS MOOT defendant's motion to strike. *See* Docket No. 24.

**Plaintiff must file any amended complaint no later than February 8, 2019.**

**IT IS SO ORDERED**.

Dated: January 11, 2019

SUSAN ILLSTON
United States District Judge