UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY A. JAMES,<br><br>    Plaintiff,<br><br>    v.<br><br>TEMPUR SEALY INTERNATIONAL, INC.,<br><br>    Defendant. | Case No. 18-cv-07130-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 36, 38 |

On April 5, 2019, the Court held a hearing on defendant's motion to dismiss the amended complaint. For the reasons stated below, the Court GRANTS defendant's motion to dismiss, without leave to amend Claims 3 and 4. The Court will give plaintiff one more chance to amend his complaint.

Separately, the Court will sua sponte (on its own motion) issue an order referring plaintiff to appointment of pro bono (free) legal counsel. Plaintiff should be aware that he will be receiving a phone call from the Legal Help Desk about locating him an attorney. **Because it will take some time for counsel to be appointed, plaintiff need take no action at this time.** Plaintiff's second amended complaint shall be due no later than four weeks after the Court issues an order appointing counsel.

The Court CONTINUES the case management conference set for April 19, 2019, to **June 14, 2019.**

**BACKGROUND**

Plaintiff Anthony Alexander James, who is representing himself *pro se*, filed this lawsuit against defendant Tempur Sealy International, Inc. ("Tempur Sealy") in Contra Costa County Superior Court on October 22, 2018. Defendant removed the case to this Court on November 23,

2018, on the basis of diversity jurisdiction. Dkt. No. 1. For purposes of this motion to dismiss, the Court treats as true plaintiff's allegations in the amended complaint.[1]

Plaintiff states that he began working for Tempur Sealy in March 2011 as a Class A driver, delivering mattresses to customers such as Macy's, Sears, and JC Penney's. *Id.* ¶¶ 10, 14. He had prior experience as a senior driver for a company called High Mountain. *Id.* ¶ 10. He has fourteen years of experience driving Class A tractor trailers. *Id.* ¶ 9.

On March 21, 2016, plaintiff logged into the Tempur Sealy electronic system log three minutes early, but the system kicked out a warning that he had logged in too early.[2] *Id.* ¶ 18. Plaintiff tried to log back out and log back in five to ten minutes later without moving the truck, but the system would not let him do so. *Id.* By way of background, plaintiff explains that in 2015 Tempur Sealy switched from a paper log to electronic log system and that the electronic system had a lot of glitches that a manager would need to manually correct and then reset the computer. *Id.* ¶¶ 15-16. At this point, plaintiff called and texted his manager, Lester Sequeira, "to see what he want[ed] him to do because usually in these situations the manager would reset the computer for the driver," but his manager didn't respond. *Id.* ¶ 19. Plaintiff then "proceeded on with the job on paper log" and "kept driving [and] making deliveries for the day." *Id.* ¶ 20. He also made deliveries the next day on March 22, 2016. *Id.* At the end of the day on March 22, 2016, plaintiff's manager called and said plaintiff needed to meet with the Human Resources manager and his union shop steward "for a violation for clocking in three minutes early [in] violation [of] the ten hour rest rule." *Id.* "At the meeting [plaintiff] was told he would be suspended for two days and the matter would be under investigation." *Id.* ¶ 21. "Two days pass[ed] and the company left [plaintiff] out of work for one month." *Id.* Plaintiff contacted his senior rep union manager, Ulises Vergara, to file a grievance but "[n]o one responded back to [plaintiff]." *Id.*

---

[1] On February 8, 2019, plaintiff filed an "Amendment to Complaint" (Dkt. No. 30, hereinafter "Am. Compl.") rather than an amended complaint. The Court reads this document and the original complaint together as constituting the "amended complaint." *See* Dkt. Nos. 1-1 ("Compl."), 30.

[2] Defendant explains that Department of Transportation regulations require that drivers "may not drive without first taking 10 consecutive hours off duty[.]" *See* Dkt. No. 10-1 at 2 & n.3 (quoting 49 C.F.R. § 395.3).

On April 22, 2016, "[plaintiff] was called by Lester Sequeira to sign [his] termination papers.[3] In the meeting [plaintiff] noticed that the company had add[ed] two more additional suspensions that [plaintiff] wasn't not [sic] aware of[;] [plaintiff] wasn't never [sic] suspended within a year, two times." *Id.* ¶ 22. A few days later plaintiff reached out to senior rep union manager Vergara to request his personnel files and to file a grievance "[b]ecause [plaintiff] was never suspended two times in a year." *Id.* ¶ 23. About four months later,[4] Vergara responded with a letter "saying that [plaintiff] was suspended, on December 14, 2015 for two days, and suspended on December 14 [sic], 2015 for three days, and on January 25, 2016 for two days, and since [plaintiff] had three one-day suspension[s] in a rolling 12-month period" he would be terminated pursuant to the Tempur Sealy driver manual, section 1.07.[5] *Id.* ¶ 24. Plaintiff alleges that in light of the information about the third suspension on January 25, 2016, "the union didn't want to meet with [plaintiff] for arbitration" or to review his personnel files. *Id.* ¶ 25.

Around May 25, 2016, plaintiff filed a complaint with the National Labor Relations Board (NLRB) "against labor organization IUE-communication Workers of America, Local 89262 for not communicating with the plaintiff, and for not showing plaintiff personal files." Am. Compl. ¶ 4. On July 6, 2016, plaintiff and union attorney Kate Hallward and union representative Vergara held a meeting to go over plaintiff's personnel files. *Id.* ¶ 5. They discovered that in his files "was a lot of forgery presented on a couple of suspensions" that plaintiff and his union rep were not aware of. *Id.*; *see also* Compl. ¶ 27 (alleging that in August 2016, plaintiff and Vergara discovered that the suspensions on December 14 and 15, 2015, and on January 25, 2016, were "sign[ed] by someone

---

[3] In the amended complaint, plaintiff states that he was terminated on April 22, 2016. Am. Compl. ¶ 2. At the motion to dismiss hearing on January 11, 2019, plaintiff said he was terminated on March 23, 2016, and that the negotiated reinstatement failed in September 2016. The difference between those dates does not change the Court's decision in today's Order.

[4] The timelines here are somewhat unclear. In the complaint, plaintiff said his union did not communicate with him for four months. In the amended complaint, he says he had a meeting with his union on July 6, 2016. Again, the difference between these timelines does not change the Court's decision in today's Order.

[5] Elsewhere in the complaint, and in the exhibits attached to the complaint, plaintiff clarifies that the dates of his alleged suspensions were December 14, 2015; December 15, 2015; and January 25, 2016. *See* Compl. ¶ 20.

3

1    other than [plaintiff], someone working for the company, and that [plaintiff's] name was forge[d]
2    on the documents that the company indicated he was suspended on, falsifying documents [and]
3    faking like [plaintiff] signed them"). Moreover, the company's contract states that a union witness
4    has to sign off on any disciplinary action and no union witness representative had signed these
5    suspensions. Compl. ¶ 27. Plaintiff states, "For non-African American[s] the procedures w[ere]
6    followed. Defendant broke the protocol and procedures for plaintiff, by forg[ing] the plaintiff[']s
7    signature." *Id.* ¶ 47. Plaintiff states that for the days the company claimed plaintiff was suspended,
8    he has proof of bank statements showing direct deposits that he worked the whole week, more than
9    forty hours per week on each paycheck, as well as child support statements showing that payments
10   were taken out of his checks for those weeks he was supposed to have been suspended. *Id.* ¶ 29.

11   On September 2, 2016, "the company came to agreement and was supposed to remove [the]
12   December 14, 2015[,] December 15, 2015[,] and January 25, 2016 suspension[s] from [plaintiff's]
13   files . . . ." Am. Compl. ¶ 6. Plaintiff explained at the hearings that defendant and his union had
14   negotiated for his reinstatement on the condition that he take a drug test. The next day, plaintiff
15   received a text from the HR manager telling him to go take a drug test, but "[plaintiff] had [al]ready
16   told [his] Union rep [he] can't start[] until September 11, 2016 and I can take [the] drug test the
17   begin[ning] of that week." *Id.* ¶ 7. On September 6, 2016, plaintiff's union rep told him to go take
18   a drug test. *Id.* ¶ 8. Plaintiff went to the "U.S Health works Medical Group," but states that "the
19   company wouldn't authorize the drug test." *Id.* On September 8, 2016, plaintiff returned to the
20   clinic and "the company said that they were suspicious about [plaintiff] . . . and want a hair test, and
21   [plaintiff] disagreed because that wasn't part of the agreement." *Id.* ¶ 9.

22   On November 4, 2016, plaintiff's union told him that they would go to arbitration for him
23   "around December 2016 or January 2017," but the union never did. *Id.* ¶ 10. In the middle of
24   November 2016, "the Union tr[ied] to buy [plaintiff] out of the deal for $10,000." *Id.* ¶ 11. Plaintiff
25   refused the deal and did not hear from the union again. *Id.* On November 28, 2016, plaintiff filed
26   a complaint against Tempur Sealy with the California Department of Fair Employment and Housing
27   ("DFEH"). He received a right-to-sue letter on February 28, 2018. *Id.* ¶¶ 13-14. Plaintiff sued
28   Tempur Sealy in state court on October 22, 2018. *Id.* ¶ 14.

1   The original complaint states four causes of action: (1) "wrongful termination in violation
2   of public policy;" (2) "breach of contract U.S. code 6503;" (3) "fraud;" and (4) "retaliation in
3   violation of FEHA [California's Fair Employment and Housing Act], Gov't code 12940 et seq."

On January 11, 2019, the Court held a hearing on defendant's motion to dismiss and issued an order granting the motion. The Court dismissed the first and second causes of action without leave to amend because the two-year and six-month statutes of limitations had expired.[6] Order Granting Mot. To Dismiss at 6-8 ("Order") (Dkt. No. 27). The Court dismissed the third and fourth causes of action with leave to amend due to a failure to allege required elements of the claims. *Id.* at 8-12. The Court gave instructions on what plaintiff needed to include in his amended complaint in order to fix his claims. *Id.* at 9-10. In response, plaintiff filed an amended complaint on February 8, 2019. Dkt. No. 30.

On February 22, 2019, defendant filed a motion to dismiss the amended complaint. Dkt. No. 36. Plaintiff filed his opposition late, on March 26, 2019. *See* Dkt. No. 38.[7] Defendant filed no reply brief. This matter came on for hearing on April 5, 2019.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened

---

[6] Regarding the second cause of action, the Court stated that "plaintiff's citation to 41 U.S.C. § 6503 is misplaced" and that the proper cause of action "must be brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185," also known as a § 301 hybrid action, where the plaintiff usually sues the employer for unfairly treating the employee in violation of the labor contract and sues the union for violating its duty of fair representation. Order at 6-8.

[7] The Court GRANTS plaintiff's motion for an extension of time to file his opposition brief and accepts the late-filed brief. *See* Dkt. No. 39.

fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

*Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**DISCUSSION**

Defendant moves to dismiss the amended complaint, arguing that plaintiff has alleged facts for only one of five elements of fraud and has failed to allege facts for two elements of retaliation, and that therefore plaintiff's amended complaint should be dismissed. Dkt. No. 36 at 3-5.

**I. Wrongful Termination and Section 301 Hybrid Claim**

In its prior order, the Court dismissed plaintiff's first and second causes of action, for wrongful termination in violation of public policy and for breach of contract (which the Court interpreted as a § 301 hybrid claim) because they were not filed within the required time limits. Order at 6-8. The Court dismissed these claims **without leave to amend**, meaning that plaintiff could not bring these claims again in his amended complaint. Plaintiff has provided no new information in the amended complaint that would change the Court's ruling on these two claims,

and so plaintiff's first and second causes of action remain DISMISSED.

**II. Fraud**

To successfully plead a claim of fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The five elements of fraud under California law are: (1) misrepresentation of a material fact (consisting of false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 448-49 (1998).

Plaintiff's case still suffers from the problems the Court identified in its first order granting defendant's motion to dismiss. *See* Order at 8-9. In that order, the Court explained:

> In any future amended complaint, **plaintiff should allege (1) the material misrepresentations of fact defendant made to plaintiff; (2) facts that show defendant knew these misrepresentations were false; (3) facts that show defendant intended to deceive and induce plaintiff; (4) that plaintiff justifiably relied on the misrepresentations and acted accordingly; and (5) the resulting damages.**

*Id.* at 9.

Although plaintiff alleges defendant made misrepresentations by forging his signature and adding three suspensions to his record, he does not allege the remaining four elements of fraud. In particular, plaintiff has not shown that he relied on the misrepresentation and that he was damaged from such reliance. When plaintiff first learned of the suspensions, he reached out to his senior rep manager because he believed he "was never suspended two times in a year." Compl. ¶ 23. Plaintiff was not deceived into thinking the suspensions were real. Instead of relying on the suspension record, he challenged it. To prove a fraud claim, plaintiff must show that defendant induced plaintiff's action to his detriment. *City of Atascadero*, 68 Cal. App. 4th at 449. Plaintiff has failed to allege such elements here.

The Court previously granted plaintiff leave to amend his complaint with instructions on the missing elements for fraud. Because plaintiff has still failed to alleged facts for all of the elements of fraud, this cause of action is DISMISSED without leave to amend.

7

## III. Retaliation in Violation of FEHA

To allege a prima facie case of retaliation under California's Fair Employment and Housing Act (FEHA), a plaintiff must show: (1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).

Plaintiff may show he was involved in protected activity by showing that he complained or opposed "conduct that [he] reasonably believe[d] to be discriminatory." *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 925 (N.D. Cal. 2012) (citing *Yanowitz*, 36 Cal. 4th at 1047). To prove an adverse employment action, plaintiff "must demonstrate that he [] has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment, rather than simply that [he] has been subjected to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity." *Yanowitz*, 36 Cal. 4th at 1051. The third element of retaliation is a causal link between the protected activity and adverse employment action. Thus, the adverse action must come after the protected activity.

In its last order, the Court dismissed plaintiff's claim for retaliation with leave to amend. The Court explained:

> **If plaintiff chooses to amend, he needs to state facts showing: (1) that he was involved in protected activity opposing an unlawful employment practice and identify what part of FEHA makes that employment practice unlawful; (2) what the adverse employment action was; and (3) the causal link between the protected activity and the adverse action. <u>To the best of his ability, he should provide clear timelines for when all of these events happened.</u>**

Order at 10.

Plaintiff has not alleged any protected activity prior to his termination. Therefore, his termination cannot be an adverse employment action for purposes of a retaliation claim. Here, plaintiff was terminated in March or April of 2016. A few days after April 22, 2016, plaintiff contacted his union rep to file a grievance against defendant. Compl. ¶ 22. Plaintiff filed a complaint with the NLRB in May 2016. Am. Compl. ¶ 4. On September 2, 2016, he and defendant

8

came to an agreement to remove three suspensions from his record. *Id.* ¶ 6. On September 8, 2016, defendant required plaintiff to take a hair follicle drug test. *Id.* ¶ 9. On November 28, 2016, plaintiff filed a complaint with the DFEH. *Id.* ¶ 12. Under this timeline, plaintiff does not allege that he engaged in protected activity, complaining or opposing conduct that he reasonably believed to be discriminatory, before his termination.

After two attempts at stating a claim, plaintiff has failed to allege the elements for retaliation. Accordingly, plaintiff's retaliation claim is DISMISSED without leave to amend.

### IV. FEHA Claim of Race Discrimination

In various ways in this case, plaintiff has stated that defendant discriminated against him due to his race. He stated this in a paragraph of his complaint. *See* Compl. ¶ 47 ("Defendant ha[s] a protocol to follow when disciplinary actions are brought up. For non-African American[s] the procedures w[ere] followed. Defendant broke the protocol and procedures for plaintiff, by forg[ing] the plaintiff['s] signature."). He stated this in his filings with the DFEH. Def.'s Req. for Jud. Not., Ex. A, C (Dkt. No. 10-6). And he stated this at the hearing on April 5, 2019. At the hearing on April 5, 2019, plaintiff stated that when defendant disciplined non-African American drivers, it followed the company protocols, but that when it disciplined African American drivers such as himself, defendant did not follow the protocols. He states that he never went through the proper procedures for being suspended (in particular by having a union rep sign off on the suspension), but that defendant followed those procedures for non-African Americans.

Plaintiff has not so far brought a claim of race discrimination under FEHA (or under any other law) in this lawsuit. However, given that plaintiff is representing himself pro se and has presented in his papers and in court the allegations that could potentially support such a claim, **the Court will give plaintiff one last chance to amend his complaint. If plaintiff wants to bring a race discrimination claim under FEHA in this lawsuit, plaintiff should allege facts showing that: (1) he is a member of a protected class, such as being African American, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) "similarly situated individuals outside his protected class were treated more favorably, or other**

9

**circumstances surrounding the adverse employment action give rise to an inference of discrimination."** *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (explaining elements of prima facie case of discrimination under Title VII) (citations omitted); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA."), *abrogated on other grounds by Nat'l Assoc. of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617 (9th Cir. 2019).

## CONCLUSION

The Court GRANTS defendant's motion to dismiss the amended complaint and DISMISSES the third and fourth causes of action without leave to amend. The Court will give plaintiff the opportunity to amend his complaint to state a claim of race discrimination. As was noted at the beginning of this order, plaintiff will be receiving a phone call from the Legal Help Desk about locating him an attorney. **Because it will take some time for counsel to be appointed, plaintiff need take no action at this time. Plaintiff's second amended complaint is due no later than four weeks after the Court issues an order appointing counsel.**

The case management conference set for April 19, 2019, is CONTINUED to **June 14 , 2019.** Counsel shall file a joint case management statement one week before the conference.

**IT IS SO ORDERED**.

Dated: April 15, 2019

_Susan Illston_
SUSAN ILLSTON
United States District Judge